This is Betty Smith v. Michael Bokor Good morning, Your Honor. May it please the Court. This is a case about a remand order under CAFA's local controversy exception, and the primary issue is whether a plaintiff can prove that greater than two-thirds of the members of putative class are citizens of a forum state without introducing any evidence that even one actual specific class member is a forum state citizen. Also at issue is whether the plaintiff here proved that Mr. Bokor is a defendant from whom significant relief is sought, even though plaintiff did not introduce any evidence of Bokor's ability to pay a potential judgment. So I'll start with the citizenship issue. There's no dispute here on what it takes to have citizenship in a state. It requires both residency and an intent to remain permanent. Let me ask you a preparatory question. As we look at this text of CAFA 1332d-4a, it's clear that a district court shall decline to exercise jurisdiction over class action in which one greater than two-thirds of the members of all proposed classes in the aggregate are citizens of the state in which the action was originally filed. That's the first of the relevant provisions. How do we review the trial court's findings in that respect? Do we review that for clear error, or do we review that de novo? Is that fact-finding? We believe it was a fact-finding, so clear error review would apply here. And what about the second provision? At least one defendant is a defendant A, A, from whom significant relief is sought by, or B, B, whose alleged conduct forms a significant basis for the claims, or C, who is a citizen of the state in which the action was originally filed. Is that fact-finding also reviewed for clear error, or is that a mixed question of law and fact to which we give de novo review? So I think— Do you understand why I asked the question? Yes, Your Honor. I think the B, B, about which—whose alleged conduct forms a significant basis of the claim, that turns on what's in the complaint, so that would be subject to de novo review. A, A, a person from whom significant relief is sought requires that a plaintiff produce evidence, and so that would be subject to clear error review. And what about the third one? Who is a citizen of the state in which the action was originally filed, that again would be clear error review, because you have to prove citizenship with evidence. And— It would be odd, indeed, then, for us to say—I mean, how are we looking at Clause 2, then? We look at a piece of it for clear error, and a piece of it de novo as a mixed question? Yes, Your Honor. Do you understand why I'm asking the question? It would be very unusual. We've had cases where we've looked at issues that were mixed—technically mixed questions of law and fact, and said it's so fact-laden that we really review it for clear error. Like, we had a case years ago, DeVarone, acceptance of responsibility under the sentencing guidelines. Was that a mixed question? Technically, it was, but we reviewed it as so fact-laden that we just characterized it as something we looked at for clear error. I'm just trying to ask you to help me understand, how do we review the district court's determinations? The first one seems easy to me. That's pure fact-finding. And some of two looks to me like it's de novo, and some of it looks to me like it's a mixed question. But it would make no sense, it seems to me, for the court—ultimately, then, we'd say we look at number two for de novo, even though there's a piece of it we look for clear error? Anyway, that's my question. Yeah, I understand the question, Your Honor. I think we have the same reaction as you, that parts of subpart two seem as if they would be subject to clear error because— Although I read the briefs of both parties to say we ought to be reviewing the totality of what he did, the district court, for clear error. Yes, and I think whatever the standard is, whether it's clear error or de novo, it wasn't met here on these two issues. So I don't know that the court necessarily has to reach it. So focused on citizenship, plaintiff here did not produce any evidence of either of the elements of citizenship residency or an intent to remain for even one specific absent class member. The class was defined as persons who resided at one of 22 Florida nursing homes at any point in time, at least four years, from four years before the filing of the complaint, until the complaint was filed. So by definition, the class includes persons who were at such a facility when the complaint was filed and persons who had been at a Florida nursing home but had left or were no longer there. So you don't think that he could look to the studies by the Centers for Medicare and Medicaid Services, Nursing Home Data Compendium 2015 or a study done at the University of Miami or other studies done by the University of Rochester, these are sort of demographic kinds of studies to inform the decision? Our position is that plaintiff needed evidence of the actual citizenship of the actual class members. So by that theory, what you'd have to do, what you're saying is the plaintiff would have to turn around, let's suppose the putative class had 11,000 members. They're going to have to come in with affidavits from 67 percent plus one? Not necessarily, Your Honor. See how utterly unwieldy the position you are taking seems to yield. Not necessarily, but I think they will have to come forward with some evidence of the actual citizenship of the actual class. And unlike the example you just posed with 11,000 here, we have a class that was estimated to number 3,000. And so it would not have been an unreasonable burden for plaintiff to come forward with some evidence related to the actual class. Okay, so suppose they picked out a random sampling of 3,000, they took in one percent, and they produced affidavits from one percent of the putative class members saying, yeah, we're citizens here. What are you, crazy? You think we're going back to Chicago? We're at the end stage of life and we're in a long-term care facility, but we're citizens of where we are. One percent. Wouldn't you come back and say that's hardly a fair sampling? Maybe. I think it depends on the methodology. It depends on if they apply. In that situation, the court would apply the same statistical rigor that it applied in Evans. Evans v. Walter Industry. And in that case, the plaintiff sampled 5,200 class members. Ninety-three percent were deemed to be residents of the state of Alabama. The court said that statistical evidence wasn't probative because plaintiff failed to show that the sample was representative of the class as a whole. So they failed to provide a predicate for extrapolating the results of that sampling to the class as a whole. And I think that same analysis would apply here. It's our position that the plaintiff could potentially prove the citizenship of the class through sampling. It just needs to be done according to... I'm curious, did you put in any evidence... We did not. ...suggesting that the methodology employed here was erroneous? That you couldn't fairly review these studies to draw some reasonable inferences? We did not put in evidence... I mean, like an expert who said, you can't look at it this way because it's infirm. Nothing like that. No, Your Honor. We did not put in evidence to undermine the validity of any of the studies. And the reason we didn't do that is because no evidence was proffered to support them. They weren't authenticated, no expert testified. You mean no admissible evidence? No admissible evidence, correct. But you did say, and I assume you relied on the fact that it was not your burden, it was the plaintiff's burden. Correct. And you said it would be easy to come up with that evidence. And yet, I'm just curious because if it goes back to the lower court, as a lower court judge, I'd like to have some instructions. The evidence would consist of documents that your client would have, for the most part, wouldn't they? Your client's financial situation? In terms of... And the names of the patients and their background. And that would come from your client. Obviously, unlike a lot of class actions, it's available to the defendant, but not the plaintiff. Would you agree with that? I think with one caveat or one nuance, I'm not certain that our client has access to the names of every resident of all 22 of the nursing facilities that would... Some of those nursing facilities... Personal records, when someone checks into the facility, they give them background information, at least the name. I guess from a name, you can then go with the Department of Motor Vehicles and find out the information that way. But I'm curious because the plaintiff attempted to put on these surveys and things of that nature, and as an alternative, it suggested limited discovery from your clients. And your response was that the discovery the plaintiff seeks, that is, domicile of more than 3,000 members of the putative class, would be incredibly burdensome, time-consuming, and intrusive. If this went back, is that the position you're going to take with the trial judge? Well, our position... That they didn't come up with enough evidence, such as a statistician who would take a fair sampling based on the evidence of the demographics of the sample. Would you say, well, Judge, we're not going to provide this evidence, which the expert would need, or evidence with regard to Mr. Bocor's financial ability to respond to a judgment? We intended to take maybe a narrower position in response to their motion for discovery. It wasn't that we were opposed to discovery on these issues. We were opposed to delaying the resolution of the case and staying the case, staying the consideration of our motion to dismiss while that discovery took place. And so we were... I take it if you go back... Absolutely. ...that that discovery would be appropriate? Yes, Your Honor. Okay. Yes, Your Honor. We would not be opposed to it, but we also would hope that the court, the district court, which would have jurisdiction under CAFA, these exceptions are not jurisdictional, so the district court would have jurisdiction and it would be free to consider our pending motion to dismiss at the same time that that discovery was taking place. If we were to agree with your position and the case would come back to the district court, is there an Article III standing problem that the plaintiffs have? Have they alleged an injury in fact? Below, have they alleged an injury in fact in the complaint? We have raised an argument on whether the theory of their injury is in fact something they can recover under. Well, to be clear, whether some of the theories of injury are legally... The question of standing would go to only whether the named plaintiff has standing. Correct. They wouldn't have to for justiciability purposes establish that on the front end at least that each of the putative absent class members have standing, although they could never get a recovery on the back end if they didn't. But we've said, in fact, we put out an opinion just last week on the point that it's the class, the named plaintiff in the case that you have to establish has standing. Injury in fact, traceability, redressability, right? Correct. You agree with that? Correct, Your Honor. Do any of the plaintiffs have an injury? They have alleged that they were receiving unlicensed care and that seems to be the basis of their injury. But the facilities, in fact, have licenses, correct? The facilities have licenses. The theory of the complaint is that those licenses should be treated as void due to what plaintiffs contend was a mistake or an error on the license application. I think plaintiffs tie that, they attempt to tie that to a monetary injury. Basically, every dollar paid to the facility on behalf of the patient, plaintiffs contend would be invalid. So they have been in a facility, they have received care, they have paid for the care. They're claiming the injury is that because these licenses that exist are void, that they should, the injury they've suffered is that they get the money back that they've paid for these purportedly unlicensed services. Correct, Your Honor. I think they say it's void ab initio, so void from the beginning. Is that a concrete injury? Uh, we would argue that it's not, and we've argued that in our motion to dismiss, that it's not a sufficient basis. Did you argue in this court that this appeal should be dismissed for lack of justiciability or standing? We have not, Your Honor. Because I took your arguments to be, one, the district court made a mistake in finding the local controversy exception in CAFA would apply here for a couple of reasons, and two, to the extent that it remanded the action based on the CAFA discretionary exception, the district court again made a mistake because the plaintiffs had not proven either of the discretionary exception threshold requirements, right? Correct, Your Honor. You have not claimed here that there's no jurisdiction because there is no injury to the named plaintiff or the unnamed plaintiffs, right? We have not, Your Honor. Okay. Thank you. May it please the court. My name is Robert Salyer, and I represent the appellees in this case, Betty Smith et al. Your Honor, I want to make clear the appellee's position regarding what's at issue here. The issue as it boils down to it, and as we understand it to be, is what constitutes evidence, and what evidence, or what does that evidence show? That question has to be at the forefront of this appeal because that sets the parameters, as Your Honor, as this court noted before, as to how the lower court's order is going to be reviewed. If this court decides that the lower court got it right in accepting the statistical evidence from government and other sources, and the analysis thereof is valid evidence in front of that court, then this court would then review the lower court's ultimate decision for clear error, that there was a preponderance. He agrees that we look at it for clear error, although we went through that technical discussion on at least a piece of the two clause, might arguably be a mixed question. But he accepts that this is clear error review. He simply says, the evidence that you mounted, the statistical evidence based on these studies, some government-wide studies, some private studies by universities, were inadmissible, that you had to put on a different kind of evidence, that you had to dwell upon something showing from these unnamed plaintiffs that they fell into that category. Yes, that's our understanding of the appellant's argument. They made it throughout. Tell us why, in your opinion, the district court was free to use studies from Medicare, as well as from the University of Miami, the University of Rochester, et cetera. Well, and as I can recall, the appellant's brief, they relied to a large extent to make that position that this type of evidence is not acceptable, admissible, to answer this question on a case from the Fifth Circuit, which we've called Preston 2. I'm not sure if that's exactly the right characterization, but it's the F-3804 case. And citing to that case, the appellants have said more than one place that U.S. Census report statistics are inadmissible as evidence. And I would just say, in rebuttal to that, there's a case, Hollinger v. Home State Mutual Company, which is also from the Fifth Circuit, which came out after Preston and, in fact, cites both of the Preston decisions. And that's 654 F-3-564, Fifth Circuit, 2011. Mr. Seller, cutting to the chase, isn't there an Eleventh Circuit case that's right on point in the LeBron case? It was cited for a different proposition, but this case was cited in 2014. And it's pretty specific. If you're going to put in treaties, surveys, statistics, you have to have an expert to interpret those. In the absence of an expert, which happened in that case because the expert was eliminated, you cannot put these hearsay documents into evidence. Well, my understanding of the LeBron case, Your Honor, was that it's not quite that, that was not the dispositive element of the case, but rather the fact that the expert, and that's what most of the opinion, as I can recall, dealt with, the expert was unqualified. But furthermore, both of the materials that he was going to use and to testify to really had to do with a population not at all narrowed down to the TANF population. Well, some of the surveys that you're relying on don't deal with the specific population that's involved, or the potential population that's involved in this case. And that was one of the concerns. I think the two issues were, I think, relevance and reliability. And LeBron indicates, to me at least, that in the absence of that, Dr. Mack, I think was his name, when he was eliminated, the defendants sought to produce all these other And the court rejected that, saying, no, they don't stand on their own. You have to have an expert to interpret, interpolate, et cetera. And it seems to me we don't have that below. I can understand, that can be an expensive proposition, but it seems to me, as LeBron suggests, you need a statistician or a social scientist to use the underlying documentation to project that on the projected class. And that was absent below. And if that isn't admissible, then there was no evidence that was reliable evidence for the district court to do what he did. Well, to distinguish LeBron a little bit, Your Honor, my understanding of the material that was attempted to be admitted into evidence was, what we're talking about in the evidence that we presented was, let's say, a superset of a large sampling site throughout the United States, throughout Florida, that the U.S. Census Bureau and other agencies put together. And ultimately, our people, our class, are a subset of that. In LeBron, my understanding is that that material had to do with not necessarily TANF recipients. Were those studies were not necessarily focused or even included the TANF? We're essentially talking about side by side. Some were TANF recipients at another location, a different population. And it was extrapolated from that, or tried to be extrapolated from that population to the one that was involved in the LeBron case. Right. And that has to do with relevancy. But the issue with regard to reliability seems to be dealt with the necessity. And it was pretty clear to me in LeBron, and you know who the author of that opinion was, was that you have to have an expert to interpret these for the court. You just can't put them out there and say this because there's nothing to show that they're reliable, or what they really mean. Well, my understanding, too, Your Honor, is that one of the distinctions with the LeBron information is that that information was more subjective analysis of the results of drug use and what that might cause and what sort of costs of that. It did require a certain amount of expertise to put together the information to present to the court. It requires the expert's opinion. With respect to the information... Let me read from that opinion. Okay. Having rejected Mack's expertise, the district court was left with studies about which it could not readily determine methodological soundness or reliability, nor establish their relevance to the TANF population in Florida. And it seems to me, as I understand the various documents and surveys you submitted, the analogy is perfect. Well, if you look at the nature of the material that we submitted, we take the position that the lower court implicitly took judicial notice of some of the aspects of these studies, if not all of them. That this is raw data that has simply been coagulated and put into a graphical or chart form. The same sort of thing, it's as if the attorney were taking raw data. The one that says it's North Carolina, right? That's right, Your Honor. That has to do with... But it was relied on by the district judge. And that's exactly, I think, what LeBron says you cannot do in the absence of an expert. Now, an expert may come in and say, based on these various experts, I can render an opinion and then render that opinion. But just to throw out the surveys or the studies, let me just again quote from LeBron. Without a qualified expert to comment on the extent to which these results can be extrapolated to the population issue in this case, a population with a different composition, in a different place, at a different time, the reliability and relevance of these reports cannot readily be determined. Close quote. How is that different than what we have here? Well, again, Your Honor, if you... I understand LeBron is obviously... Let me offer you a difference. We took issue because none of the articles cited dealt specifically with the Florida TANF population and therefore concluded without a qualified expert to comment on the extent to which the results could be extrapolated to a population at issue in this case, that is a population with a different composition, a population in a different place, a population at a different time, the reliability and relevance could not readily be determined. Here, at least some of the studies, the Miami University study and the census data, were about the nursing home population in Florida. So there is some evidence, although not all of it, that bears directly and specifically on the Florida nursing home population. If there be a difference, that seems to me to be what it was. That's right. The CMS study, which is the largest of the exhibits and the first one in the appendices, says that one of the things, and this is just a function of reading the numbers, that 87% of Florida nursing home residents are from the same county. Now, if I could turn, and I understand that LeBron is obviously an 11th Circuit case, and the case that I cited just a moment ago, the one that construed Preston and came after that in the 5th Circuit, Hollinger, it says, and I quote, the United States census data is an appropriate and frequent subject of judicial notice. So if those numbers are, that study is in effect like a farmer's almanac that might tell you when the full moon was on, you know, in July four years ago. These are facts that are establishable and not really subject to dispute. The fact that 87% of Florida nursing home residents in 2015 were resident in their own home county seems to have been established by the U.S. government, and I think this court or the lower court would take that as such. The defendant takes the position that residence is totally different than citizenship, which I believe it is. That's right. And that none of these deal with citizenship. Well, that's not entirely true, Your Honor. Florida, or the almanac as you describe it, I think comes within that category. Excuse me, Your Honor. I think what you refer to as the almanac, something that you might be able to take judicial notice of. Right. I think that you could take judicial notice of all of the information in here to the extent that a court might disagree to its relevance. Now, that's obviously a different question. Well, but for example, as I recall, one of the surveys said that a certain percentage of people, patients at these facilities or these types of facilities, when they leave, they leave and stay in the same county. Yes, Your Honor. But that doesn't speak to citizenship, does it? Well, if... Unless you extrapolate something else to it. And what concerns me, while there might be some of these documents or these surveys that might be admissible under judicial notice, that there are others that are not. And what the judge did down there was build on several of these, some of which I thought left gaps because you couldn't take judicial notice of those kinds of studies. Well, Your Honor, I think that one of the studies indicated, and it was based on a survey that was done by, it wasn't the Pew Research study, but I think one of the other studies, it indicated that individuals 65 and over, 79% have no intention of moving at all. Not out of state, but at all, across the street, wherever, that they are staying in there. And that's a function of... That's a question of intention. It's a function of common sense. I agree with that. And intuition. I agree with that. My concern is whether, formally, you could establish admissible evidence to establish what is probably clearly the case. Well, what I'm going to say to that, Your Honor, is that is, as opposed to, I think, a case from this circuit, the Gavron case, or also the Sprint case from the Seventh Circuit, there were instances where the plaintiff's attempt was, they defined the class in such a way, they didn't define it just as state citizens, but they defined it in such a way that they thought they didn't need any additional evidence. And those courts said, no, actually, you can't just say all telephone numbers in Kansas City. And the court started down the road of, the common sense says that that's mostly, that's likely to be all Kansas City residents. However, we can't just do that. You have to have additional evidence of both the residents, but also the intent to remain. Understanding of citizenship is both the residents plus the intention to remain in a particular spot. I do want to make one additional comment about the suggestion that a survey of the actual class members, in all actuality, that would produce evidence. Obviously, it would be more specific to our class, clearly, but it's actually less reliable than some of the data that's actually put into evidence here. First off, there's the Evans problem of how do we choose that? Even if we just totally randomize, and I see, Your Honor, I'm out of time. That's all right. You take your time. If, even if the attorney, the plaintiff's counsel produces some sort of questionnaire to send out to 1%, 10% of the potential class members, the class members are, this is going to be something prepared in expectation of litigation. And the fact of the matter is, is they're going to potentially gamesmanship the answers that you get back. Most likely, lo and behold, all 30 of the questionnaires we got back, they all are Florida citizens at the time, and they all intend to live in Florida, all 100% of them. Well, in all actuality, if we're talking about the Pew Research Center or the U.S. Census data as crunched through these articles, and by the way, any sort of crunching that's going on of that data, explanation for that is in those articles. But in any event, those are neutral, there's no ax being ground when someone comments on U.S. Census data. And when the industry tries to get an idea of its nursing home market, it wants the truest possible notion of what the market is doing. And if Florida residents are some subset of that market, then presumably, you know, if we were looking under the Daubert standard, certainly this information is circumstantial, but far more reliable than direct evidence potentially from the class members. Why is that? Why? Are you afraid of gamesmanship on the part of the other side? Tell me how the survey of the class is not going to provide the best answers. Well, let's just say it this way. It will provide the best answer for the plaintiff's position, because there would be gamesmanship potentially going on, and it would be in favor of the class members, my position. I grant that, but I'm just saying that that is less reliable than a U.S. Census. Of course, the irony is if you sent out a notice to all 3,000, the problem is methodologically designing an accurate survey would be difficult, because more likely than not, you wouldn't get responses from a whole bunch of folks who had no interest. That's correct, Your Honor. And again, even though one might say that, well, the Plaintiff's Counsel needs to find people that know how to do this, I don't know that I would be able to design a questionnaire to send out and, A, get a response, and, B, get a response that's both reliable as well as tells us what we want to know, whereas we have already a lot of this information, which includes the Florida nursing home population, at our fingertips from the government sources. Let me ask you a different question. Admittedly, your colleague did not raise, but was raised in the course of our discussion with you, standing is always at issue, whether raised by a party or not, whether there's a real, live case of controversy is always at issue. Tell me why the named plaintiff would have standing. Is there some concrete injury sustained that's traceable to the misconduct and redressable by a court? Well, I think, as I listened to your Honors asking my learned colleague that question, I sort of think that we're on the slippery slope of, well, if there is no 12B6, if it's not a redressable injury, I mean, that's like a 12B6 type analysis. No, it's a 12B1 application saying the court is without the power to entertain the lawsuit in the first place because there's no justiciable controversy. There's no injury and nothing Congress could say or do in a statute could trump the obligation that there be an Article III standing. He's not made this argument and it's not really before us in the sense that it was fashioned by anybody, but I'm just curious what your response is. Where's the injury in fact? My understanding of the injury, and I'm trying to recall back to the exact words that are in the complaint, it's by virtue, and let's also keep in mind that there may have been a service, and that service includes being licensed to perform that service, and it turns out that that is not the case. I mean, potentially there is a consumer complaint possible there. There's potentially, maybe even a Lanham Act complaint I'd have to read to take a look at that. But the claim is that there was a scheme to intentionally conceal information in the mandatory licensing applications to the Agency for Healthcare Administration? Yes, Your Honor. Well, one of the things, and I haven't thought this through, but there's some question as to what sort of insurance is being carried on these. You claim that the misinformation in the licensing applications rendered the licenses for these payments made were unlawfully procured through fraud, that these folks were in facilities that weren't properly licensed to begin with. Right. That this is, as it's been at this particular point, it's a fraud claim, at least to some extent. I got it. Thank you very much. Okay. Thank you, Your Honor. Your Honors, I'd like to begin with a point that my colleague made towards the end of his presentation, which was that a survey of the actual class members would be worse evidence and less probative than the surveys of people that weren't in the class, that had no nexus to the class, that were attached to the remand motion. And our response to that is, I guess, we would give the plaintiffs, we believe this is something that the plaintiffs are capable of doing. I'm actually working on a case with counsel at the table in the Northern District of Alabama where we are attempting to prove the citizenship of the class. You hire statisticians, they conduct surveys of a randomized sample. You reach the right amount of the randomized sample to feel confident you can extrapolate the results to the remainder of the class. There are well-settled statistical methods for doing this, and that's something the plaintiff could have done here. They could have identified the class members very easily, and they could have undertaken some effort to do this. Counsel also said that the studies and surveys they relied upon were of the actual members of the putative class, and that's not true either. Even the few data points that they cite... Weren't the census data concerning Florida nursing home population? It predated, it predated the class period in large part. But it concerned Florida nursing home population, did it or not? Correct, Your Honor. But it predated the class period, so there are people who are in the class that would not be covered by it. So again, we've kind of raised these issues with the ability to extrapolate, to rely upon evidence that doesn't relate to the class. We preserved all of these issues below, and in our opening brief, appendix volume four at 3031, 33 to 34, has where we preserved it below. And so, you know, I think that it came up on the clear air standard, and the clear air standard is one that says a factual finding should be reversed if there isn't substantial evidence on the record to support it. Here there's no evidence on the record. None of this evidence relates to the citizenship of the actual class period. Curious about something. Party offers its census data from the United States Census Bureau without an expert, assuming it's otherwise relevant material to the dispute, relevant in the sense that it makes a fact in issue more or less likely. Does he have to put an expert on to establish the foundation, the methodology, and reliability of the United States Census Bureau? Is that your position? No, Your Honor. I think the U.S. Census data- The document would be admissible if it otherwise, he could otherwise establish its relevance to the dispute in question. Correct. And our position here on the U.S. Census data, they relied on annual migration patterns. And the data shows that all people, whatever bucket, however you slice it, very few people move across state lines in any given year. It was around 3%, between 3 and 4%. And so that data essentially would prove that you are a citizen of wherever you reside. If that data point, that very few people move across state lines, was sufficient to prove subjective intent, then it would prove that everybody had- Let me ask you a question. In these facilities, these facilities were of the kind that were providing long-term care to the patients, right? Sometimes long-term. These actually are not long-term care facilities. They're skilled nursing facilities. And so by statute, there is a difference between the two. Skilled nursing facilities- Weren't the patients still there for long-term? Not necessarily every patient. Based on the pleadings that we have and what we have in front of us. The only reason I ask the question is, if indeed that was the case, why couldn't I reasonably infer from that fact alone that it's likely these folks were citizens of the state within which I- If somebody goes into a nursing home for long-term care, they're not coming out, period. It's just as simple as that. And I suppose it's possible that in some instances they might, but I suggest to you that it is indisputable that if you place a parent or a loved one in a long-term care nursing facility, that those folks, and they send them down in Florida, that they're going to go back to Michigan or Ohio or Connecticut, even assuming, argue one day, they had come from that location. I'm just asking what inference one might reasonably draw from the fact that you had a long-term nursing care for these people. And if they were going to move, is it reasonable to infer that they're going to move so far that they're going to have to go out of the state? A few responses to that, Your Honor. First of all, these facilities are skilled nursing facilities, which is a distinction from long-term care. Sure. And so, there is no evidence of what percentage were there long-term and what weren't. And again, by definition, some unknown percentage of the class left, would have by definition left those facilities. To the inference, to what we think is a common sense inference, I know plaintiff believes it's common sense that if you're in a nursing home, you're there to stay, you're a citizen of the state, you're never leaving. Florida has a lot of residents who, or a lot of people who are in Florida who may not be residents of Florida. They may be snowbirds coming down for the winter. They may be transients working in Florida. They may be people who are living in Florida, but originally hailed from somewhere else. In our brief, we, you know, and there is data in plaintiff's, data that shows that. In our brief, we made the point that it is a common sense inference that if somebody leaves a nursing home, they may very well be returning to the state of origin where their family is, which is a very common sense thing to think, that if somebody who is elderly and infirm and they're leaving a nursing home, they're going to go with the people who can help take care of them. And so again, but I think all of this illustrates our primary point, which is really plaintiffs don't have any evidence of the actual class members. They're left to these common sense inferences. They can cut both ways, no matter how intuitive it may seem. The court should set a standard that it requires actual evidence. That's consistent with Evans. It's certainly consistent with precedent from the 7th Circuit. Well, you accept some of this is admissible. Certainly the Census Bureau is admissible. What significance we attach to it is another question. What inferences we may draw is another question. But it's not a case that there is no evidence. Right. I mean, I think the census data would prove far too much. It would improve citizenship in all cases. But many of the studies are studies of hospitals in North Carolina, of nursing facilities in Wisconsin, of nursing facilities in New York, right? They have a clear either geographical or temporal distribution. Right. No, I'm talking about the stuff, though, that related to Florida. But I think we got your argument, and we thank you all. We will be in recess until 9 a.m. tomorrow.